IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

ROBERT CHESSER,                      :
                                     :
          Petitioner,                :
                                     :
     vs.                             :   Case No. JKB-16-0337
                                     :
UNITED STATES OF AMERICA,            :
                                     :
          Respondent.                :
-------------------------------------

ENTERED
RECEIVED

APR 29 2020

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
AT BALTIMORE
BY                          DEPUTY

## EMERGENCY MOTION FOR REDUCTION IN SENTENCE
## PURSUANT TO 18 USC §3582 COMPASSIONATE RELEASE

Now comes Robert Chesser, henceforth known as Petitioner, filing Pro Se, and seeking immediate relief for Reduction in Sentence. Petitioner asks this Honorable Court to consider this Motion to be liberally construed along any avenue providing relief. Estelle v. Gamble, 429 US 97, 106 (1976); Haines, 404 US at 520-21 (Pro Se filing should be liberally construed) and Graham, 89 F.3d at 79 (When read liberally a Pro Se Habeas Petition should be read to raise the strongest argument that they can suggest).

PROCEDURAL BACKGROUND:

This Honorable Court sentenced Petitioner on August 31, 2018, to a term of sixty (60) months imprisonment and three (3) years of supervised release.

On March 25, 2020, Petitioner submitted his formal written request for compassionate release to Warden David E. Ortiz at Fort Dix Correctional Facility in Joint Base MDL, New Jersey. See Exhibit "A". On that same date, Petitioner submitted a Motion requesting Appointment of Counsel, which this

Honorable Court denied, without prejudice, as premature, since Petitioner had not "fully exhausted all adminis¹rative rights to appeal a failure of the Bureau of Prisons to bring a Motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier."

On April 24, 2020, upon the lapse of thirty(30) days, Petitioner receive¹ Denial of his request for Compassionate release from Warden David Ortiz. See Exhibit "B". Having now satisfied the thirty(30) day lapse period, referenced by this Honorable Court, Petitioner heretofore proceeds with his Petition seeking Modification of Sentence.

UNDERLYING FACTS AND HISTORY:

More than fifteen (15) months ago, on January 22, 2019, Petitioner presented a peculiar lump mass on the left side of his neck to the medical staff at Fort Dix Correctional Facility. The physician informed Petitioner that the lump mass was inconsequential and likely a result of "climate change". Over the course of several months, the lump did not dissipate, but rather, showed noticeable and concerning growth. Petitioner repeatedly sought medical attention to no avail, until finally, in July 2019, a CT Scan was ordered and performed for further evaluation of the lump mass.

Over the course of the next five (5) months, Petitioner received no results of the aforementioned CT Scan, and received no medical care, information, or attention. This continued in spite of continuing requests, continue d presentation of lump mass growth, substantial weight loss, and seeking administrative intervention through email to the Assistant Warden of Operations, all which were completely ignored. Finally, almost eleven (11) months from initial presentation, and five (5) months after the initial CT Scan, Petitioner was granted an appointment with an Ear, Nose

and Throat (ENT) specialist on December 3, 2019. At this point, Petitioner was still denied any results of the prior CT Scan, but informed that a biopsy would be needed. Said biopsy was in fact ordered and approved on December 6, 2019.

Petitioner was then subjected to nearly two (2) more months without any information or medical care before the biopsy was finally taken on January 27, 2020. Shockingly, Petitioner was then again subjected to more than two (2) additional months passing without any updates, diagnosis or medical attention. On March 5, 2020, Petitioner was finally informed that biopsy results indicated malignant cancer, requiring additional studies. On March 18, 2020, a PETscan immediately revealed the horrible magnitude of Petitioner's situation. The lump mass, presented fourteen (14) months prior, was in fact primary tonsillary cancer that had now metastacized to the lymph nodes, at level one and level two. See Exhibit "C".

Since receiving his diagnosis on March 18, 2020, forty (40) days ago, Petitioner has received absolutely no medical care or response to his continuing pleas for assistance. During that time, Petitioner has several times approached the medical staff visiting his unit during the COVID-19 lockdown of BOP facilities, all to no avail. The staff has been either completely unaware of his plight, or otherwise advised him nothing could be done at this time. On one such occasion, Petitioner was shockingly told that he was mistaken about his PETscan diagnosis and did not have cancer. On April 4, 2020, Petitioner personally approached Warden Ortiz upon noticing him in the Fort Dix East Compound "chow hall" dining facility. Petitioner respectfully informed the Warden of his serious diagnosis and dire circumstances. The Warden replied, "It's a bad time to get that", and promised to speak to the medical team and "look into the matter".

As of this date, April 27, 2020, now more than fifteen (15) months from initial presentation and 40 days from diagnosis, Petitioner has received no further replies or contact from anyone. Petitioner has shockingly received no treatment, no medical care, no medical plan, no responses to repeated requests, no oncology consultation, no medications, no surgical intervention, and no attention. Petitioner's metastasis has most certainly advanced even further during this inexplicable passage of time. But without any care, treatment, or follow up, his death march continues unchecked, untreated and unabated. The only care received by Petitioner during the entirety of this harrowing journey has been the dietary supplement "Ensure". It should however be noted that Petitioner's initial request for "Ensure" (to provide nutrition after continuing presentation of the lump mass and severe weight loss) was at first denied as late as January 17, 2020, and not approved until March 5, 2020, after continued insistence by Petitioner and submission for administrative intervention. See Exhibit "D". Petitoner's continued pleas to the BOP for medical care and attention are now reduced to an excercise in abject futility.

ARGUMENT:

Petitioner submits that his once plausibly manageable medical condition is now a dire terminal calamity that continues to worsen with each passing day. The inexplicable delays, denial of both care and information, misdiagnosis, and seemingly deliberate indifference to Petitioner's metastacized tumorous cancer has irrevocably exacerbated his condition and likelihood of fatality. Petitioner further submits that this apparent apathetic malfeasance, coupled with the extraordinary risk of exposure and infection from COVID-19, is akin to a death sentence unilaterally imposed upon Petitioner by the Bureau of Prisons.

The Centers for Disease Control and Prevention (CDC) has clearly identified those people deemed at high risk for COVID-19 infection and its fatal effects. See www.cdc.gov/coronavirus. Among identified are people with severely compromised immune systems, which most certainly includes a patient suffering from a primary metastacized tumor spread to the lymph nodes who has received no medical treatment for fifteen (15) months. The Maryland Department of Health has also identified people presumed to be at highest risk for serious illness from COVID-19 exposure, including those with pre-existing medical conditions, and specifically cancer, as well as other conditions impacting the immune system's ability to fight germs. See Exhibit "E".

The legitimacy and urgency of Petitioner's underlying Motion are highlighted by the substantial exposure to COVID-19 while incarcerated within the Bureau of Prisons (BOP) facility at Fort Dix Correctional Institution. As of this date, upon information and belief, at least twenty-nine (29) or more inmates at Petitioner's compound are now infected, as well as multiple correctional officers, and those numbers continue to rise even as this Motion is submitted. See www.bop.gov. The current conditions of confinement subject the Petitioner to substantially greater risk of infection, as inmates are unable to exercise any form of social distancing, with more than two hundred (200) inmates residing in each barrack-style building unit. Petitioner sleeps in a 12-man cell and otherwise must be among the other 200 inmates each day for all other needs, including food and hygiene. The extraordinary circumstances which have befallen our nation as a result of COVID-19 is even greater in the BOP environment, where the curve of infection continues to rise, not flatten. The risk to Petitioner's already dire medical condition is itself extraordinary as a result of

COVID-19, particularly in light of the continued lack of medical attention and care in Petitioner's case.[1]

COMMUNITY RE-ENTRY PLAN:

Petitioner has fully accepted his guilt and incarceration with the highest level of remorse, and has exhibited a serious commitment to eliminating any likelihood of recidivism. Petitioner has participated in, and successfully completed, several re-entry courses of programming, including the initial 12-hour Fort Dix Drug Education Program, and the more intense, 40-hour Non-residential Drug Treatment Program. See Exhibit "F". Petitioner has also maintained a strong record of positive behavior without infractions, while setting a good example for his fellow inmates. Petitioner is well prepared for any release to home confinement, where his wife Dawn Chesser awaits him at their marital residence and will provide

---

[1] In spite of his obviously inordinate risk of exposure to the COVID-19 infection and its fatal effects, Petitioner has been denied release under the Cares Act, which was explicitly legislated in response to the COVID-19 pandemic.  Petitioner was informed by his BOP unit team that he has not been selected, and is not qualified, for Cares Act relief.  Petitioner respectfully disagrees.  His medical condition certainly rises to the CDC standard of compromised immunity as adopted by the BOP.  Petitioner also satisfies the "totality" standard for non-weighted evaluation of the additional qualifiers and disqualifiers delineated by the Department of Justice and BOP authorities.  Petitioner possesses a low Pattern score, a low Bravo score, low risk of recidivism, verifiable re-entry plan, and no behaviorial infractions.  Even if the BOP somehow determined the Petitioner did not qualify for "priority" consideration, this does not simply disqualify him from Cares Act relief.  Petitioner submits that this provides further support for his compassionate release argument, and that this reasoning warrants additional consideration and remedy by this Honorable Court, at its discretion.

him with much needed emotional support, while attending to Petitioner throughout his medical journey. Petitioner has readily renewable health insurance with the well respected Amerigroup, an Anthem company, member ID# 721035225, which includes coverage for an extensive "Cancer Care Quality" program. Petitioner submits that home confinement, with access to care and personal attention at his residence, along with the immediately necessary medical services available just ten(10) miles away at Johns Hopkins Cancer Center, and other readily accessible treatment facilities, would allow for the humane care, treatment and attention that has not been made available to him to date. Home confinement would also greatly reduce his presently high risk of exposure to CODIV-19 spreading through Fort Dix Correctional Institute.

CONCLUSION:

Petition avers that he has provided substantial cause for reduction in sentence leading to immediate release to home confinement. The statutory authority of 18 USC §3582(c)(1)(A) permits sentence reduction upon a showing of "extraordinary and compelling reasons" if such a reduction is consistent with applicable policy statements issued by the sentencing commission. Petitioner respectfully submits that the urgency of his current dire medical condition, the deliberate indifference exhibited by the Bureau of Prisons, the complete lack of treatment and medical care to date, the certain growth and continued terminal metastasis of his cancer, and now the substantial exposure to COVID-19 infection and fatality, collectively rise to, and satisfy, the standard for "extraordinary and compelling" circumstances warranting immediate reduction in sentence and release to home confinement.

WHEREFORE, Petitioner seeks such compassionate release, modification of sentence, and terms of immediate release to home confinement deemed appropriate by this Honorable Court.

Respectfully submitted,

Robert Chesser

Exhibit "A"

March 25, 2020


Mr. David E. Ortiz, Warden
Fort Dix Correctional Institute
Post Office Box 38
Joint Base MDL, NJ 08640


Re: <u>Robert Chesser, Inmate Reg. # 62149-037</u>


Dear Warden Ortiz:

      Respectfully, I am submitting this letter as formal request for you to grant me compassionate release and file any necessary and appropriate documents and motions to reduce my sentence and effectuate my immediate release accordingly.

      Fourteen months ago, I sought medical attention here at Fort Dix for a lump mass on the left side of my neck and was advised it had been caused by climate change and would dissipate.

      Four days ago I received the conclusive findings of a PET/CT scan of the head/neck region, showing primary tonsillar cancer that has already metastacized to the lymph nodes at level one and level two. Attached please find a copy of the report from Gary Silverstein, MD, the reading radiologist from Robert Wood Johnson University Hospital at Hamilton.

      This invasive cancer is life-threatening, requiring extensive surgery & treatment. In particular, I am gravely concerned, as is my family, that the substantial delays and indifference to my medical needs, allowing for the growth and malignant metastasis during the course of over an entire year, may in fact result in my death, unless I am permitted to avail myself of prompt medical care and attention in the community. Furthermore, and of equally grave concern, is my susceptibility to the CoVid-19 Virus and its fatal effects. As you know, the fatality rate among those inflicted is particularly high for anyone with substantial illness and weakened conditions, a category within which I fall squarely.

      My records indicate that I first presented the mass on the left side of my neck during my intake screening on January 22, 2019. The physician examined the lump, manipulated it, and acknowledged the anomaly, but stated it was a result of "climate change" and would simply subside over time. However over the course of several months, the lump did not dissipate, but rather, showed noticeable growth. I therefore presented the lump repeatedly and persistently again at medical, until finally, a full 6 months after first presentation, a CAT scan was

ordered and performed in July 2019.

Over the next 5 months, I received no results, in spite of my various requests, continued growth of the mass, and substantial weight loss. I wrote an email to the Assistant Warden of Operations during that time, but received no response. Finally, on December 3, 2019, I was sent to an ENT specialist, and a biopsy was ordered and approved on December 6, 2019. At that point I still was denied any information regarding results of the July CAT scan.

Almost 2 more months passed before the biopsy was finally taken January 27, 2020. And they shockingly, more than another 2 months passed without any results. Finally, on March 5, 2020, I was informed the results showed malignant cancer. And two weeks later, on March 18, 2020, a PETscan revealed the magnitude of my situation, showing that the lump mass presented 14 months ago was now primary tonsillary cancer that had metastacized to the lymph nodes. As of today, March 25, 2020, I am still without any treatment, surgical intervention, or further guidance on next steps.

As you can see, this journey has been arduous to say the least, emotionally and physically tragic to be more accurate. Respectfully, I submit to you that expeditious and timely attention, diagnosis, testing, and treatment would have prevented the continued growth, metastasis, and saved my life. I provide this history not for purposes of blame or finger-pointing, but merely to express the dire gravity of my situation, the journey, and the legitimate need for release into the community so that I can avoid further delay, harm and suffering, and instead avail myself of immediate and appropriate medical care and treatment to salvage whatever remaining options that might exist for my malignant metastasis.

Heightening the legitimacy and urgency of this request is the COVID-19 Corona Virus Pandemic. If I were to be exposed to the virus, I would most certainly succumb to its fatal effects as a result of my weakened immune system. Subjected to the confinement and restrictions recently implemented by the Bureau of Prisons, my access to care, services, and information is now even more substantially limited. My exposure to continued metastasis, more delayed care, and the deadly corona virus, further exacerbate the urgency of this request.

For your consideration, I would like to highlight my extremely low risk of any recidivism, my low criminal score, the non-violent nature of my crime, and good behavior here at Fort Dix. Upon release, I would reside with my loving wife and three of our children in our marital home, who would provide the additionally necessary support and care as this battle for my life is undertaken

Please accept my sincere appreciation for your urgent consideration of this request. I will look forward to your reply at the earliest possible time. Thank You.

Respectfully submitted,

Robert Chesser

cc: United States Department of Justice,
    Office of the Pardon Attorney

    The Honorable James K. Bredar,
    U.S. District Court, Eastern District of Maryland

Exhibit "B"

**Chesser, Robert**
Register Number: 62149-037
Unit 5741 (D)

## INMATE REQUEST TO STAFF RESPONSE

You requested a reduction in sentence (RIS) based on concerns about COVID-19. After careful consideration, your request is denied.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

_____
David E. Ortiz
Warden

4/17/20
Date

Exhibit "C"

FTD TC 62149-037

DIAGNOSTIC IMAGING

# ROBERT WOOD JOHNSON
## UNIVERSITY HOSPITAL
# HAMILTON
One Hamilton Health Place
Hamilton, NJ 08691-3599
609-584-6611

RADIOLOGY AND DIAGNOSTIC IMAGING

# FINAL REPORT

DR CARL SCEUSA
5756 HARTFORD RD
FORT DIX, NJ 08640

Name:        **CHESSER, ROBERT**
MRN:         626258
SEX:         M
DOB:         09/09/1969
Visit#       073259354
Patient Type: OUTPATIENT DIAGNOSTICS
Req. Dept.:  RWJUHH

| | |
|---|---|
| DATE OF EXAM: | 03/18/2020 12:03 |
| EXAM NAME: | PET/CT INT STG HED/NCK CA |
| Reason for Exam: | R/O Squamous cell cancer of neck and possible mets |
| EXAM CODE: | 46800052 |

ACCESSION : 3703948

Total Body PET/CT

History: Squamous cell neck cancer. Initial staging.

Procedure: The patient fasted for 4 hours prior to the exam. 59 minutes following the intravenous injection of 10.81 mCi of Fluorine-18 FDG, total body PET/CT was performed from the base of the skull to the upper thighs. Delayed slices were obtained through the head, neck and upper chest. Attenuation correction was applied and fusion images were created from the source data. Automated exposure control utilized. The blood glucose was 92 mg/dl.

Comparison Studies: Comparison is made with ultrasound images from an ultrasound guided biopsy of a neck mass on 1/27/2020. No other prior studies are available for comparison.

FINDINGS:

Neck: There is asymmetric prominence of the left tonsil, which measures approximately 2.0 x 1.7 cm. It is hypermetabolic, with a maximal SUV of 10.24, and 11.07 on the delayed images. It is suspicious for a primary tonsillar cancer.

There is a 1.0 x 1.0 cm left level 2 lymph node, with a maximal SUV 3.71, and 4.46 on the delayed images. There is a 2.8 x 2.8 cm left level 1 lymph node, that is centrally necrotic, with a maximal SUV of 4.32, and 5.03 on the delayed images. These are suspicious for nodal metastases.

Chest: No significant abnormalities.

Abdomen/Pelvis: There is a tiny fatty right inguinal or spigelian hernia, with hypermetabolic folic soft tissue just above the hernia, with maximal SUV 2.93, possibly representing fat necrosis.

Bone marrow: No significant abnormalities.

Incidental CT findings: There is a 1 cm lucent lesion with a thick sclerotic margin within the medial aspect of the left iliac wing, most likely representing focal fibrous dysplasia.
It is borderline hypermetabolic, with a maximal SUV of 2.12. This is most likely of no clinical significance.

IMPRESSION: Hypermetabolic left tonsillar mass, suspicious for a primary tumor. Left level 1 and level 2 metastatic lymph nodes. The level 1 lymph node is centrally necrotic. No distant metastases.

| | |
|---|---|
| Resp. Radiologist: SILVERSTEIN GARY S | Patient Name: CHESSER, ROBERT<br>MRN: 626258 |
| | Page: 1/2 |

**CHESSER, ROBERT**

Visit Note: March 6, 2020

| | | | MRN: |
|---|---|---|---|
| 94399 | Male | 03/09/1969 | EMA12843341 |

## ENT History
Reviewed and no changes noted
March 10, 2020.
None

## ENT Surgery
None

## Social History
Reviewed and no changes noted
March 10, 2020.

EtOH none
Caffeine Use: Several times a day
Smoking status - Former smoker
Additional Details: 1 years

## Medications
Reviewed March 10, 2020.
None reported.

## Allergies
Reviewed March 10, 2020.
No known drug allergies

## ROS
Provider reviewed on Mar 06, 2020.

A focused review of systems was
performed including ENT and Mouth,
Eyes, and Musculoskeletal and was
notable for neck mass.

No Dysphagia, No Dysphonia, No
Ears, Itching, No Excessive
Salivation, No Foul Smell, No Hearing
Loss, No Loss Of Smell, No Mouth,
Mass, No Fissure, Pain, No
Odynophagia, No Oral Bleeding, No
Oral Pain, No Otalgia, No Otorrhea,
No Pnd, No Rhinorrhea, No Sound
Sensitivity, No Stridor, No Throat
Pain, No Tinnitus, No Tongue
Swelling, No Ulcers, No Vertigo, No
Neck Pain, No Eye Pain, And No
Redness.

## Family History
Reviewed March 10, 2020.
Other: review intake form.

## Medical History
Reviewed and no changes noted
March 10, 2020.
None

## Surgical History
Reviewed and no changes noted
March 10, 2020.
None

**Chief Complaint:** F/U Neoplasm uncertain behavior, submandibular gland evaluated on
December 3, 2019

**HPI:** This is a 50 year old male who is following up for neoplasm uncertain behavior, submandibular gland (Neoplasm
of uncertain behavior of the submandibular salivary glands). He was seen on December 3, 2019, at which time Order
FNA was performed and
CT scan order 08/19 finding mass upper anterior triangle posterior to submandibular gland displacing submandibular
gland approximate 5 cm in length and 3.3 x 2.5 cm tansveres diameter . I will order FNA biopsy for further elevation.
follow up after Biopsy to review results.( Written to the Bureau prisons to sent CT CD next visit).

The patient is now here for follow up test results.

Today the patient reports:
  Quality: tender, Severity: moderate. Signs and symptoms: neck mass.

Interval History: Patient is present to review pathology results with MD
Discuss next step in plan of care.

**Exam:**
A basic ent with scope exam was performed

External Ears: external ear examination of normal size and morphology without traumatic or congenital deformity AD, externa
ear examination of normal size and morphology without traumatic or congenital deformity AS.

External ear canal AD: normal EAC AD

External ear canal AS: normal EAC AS

Tympanic membrane AD: AD tympanic membrane intact, no
fluid, normal mobility on pneumotoscopy

Tympanic membrane AS: AS tympanic membrane intact, no
fluid, normal mobility on pneumotoscopy

External Nose: Normal external nasal examination without deformity

Nasal cavity:

Right nasal cavity: inferior turbinate hypertrophy and
middle turbinate hypertrophy;
The remainder of the right nasal cavity examination (nasal
mucosa, inferior, middle, and superior turbinates, septum,
superior, middle, and inferior meati, sphenoid ethmoid recess,
and nasopharynx) was normal with the exception of the
above findings.

Left nasal cavity: inferior turbinate hypertrophy and
middle turbinate hypertrophy;
The remainder of the left nasal cavity examination (nasal
mucosa, inferior, middle, and superior turbinates, septum,
superior, middle, and inferior meati, sphenoid ethmoid recess,
and nasopharynx) was normal with the exception of the
above findings.

Additional findings nasal cavity:
middle turbinate hypertrophy and inferior turbinate hypertrophy
The remainder of the nasal cavity (right and left) examination (nasal mucosa, inferior, middle, and superior turbinates,
septum, superior, middle, and inferior meati, sphenoid ethmoid recess, and nasopharynx) was normal with the exception of
the above findings.

Oropharynx: left tonsil firmness fullness left tonsil

The remainder of the oral cavity and oropharyngeal exam (buccal mucosa, tongue, floor of mouth, hard and soft palates,
tonsils, posterior and lateral pharyngeal walls) is normal with the exception of the above findings.

Larynx: normal larynx and normal vocal fold mobility

Hypopharynx: normal pharyngeal walls and piriform sinuses

Nasopharynx: normal nasopharynx

**Gregory Smith, MD (Primary Provider) (Bill Under)**
(609) 403-8840 Work
(609) 403-8852 Home Fax

Princeton Eye and Ear - Lawrenceville
2999 Princeton Pike, 2nd Floor
Suite 6
Lawrenceville, NJ 08648

Page 1



# CHESSER, ROBERT

Visit Note - March 5, 2020

| | PMS ID: 94399 | Sex: Male | DOB: 09/09/1969 | APN: EMA12843341 |

**Salivary:** Normal inspection of salivary glands.

**Neck:** 3.3 x 2.5 cm left level 1b neck mass

The remainder of the neck (trachea, lymph nodes, skin) is normal with the exception of the findings noted above.

**Thyroid:** normal thyroid examination without masses or nodules

**Neck Lymph Node:**
neck adenopathy level I, left
The remainder of the cervical (neck) lymphatic examination is normal with the exception of the findings noted above.

**Neuro - Cranial Nerves:** Cranial nerves II-XII intact.

**Appearance:** well nourished, well groomed.

**Communication:** normal vocal quality and ability to communicate

**Orientation:** Alert and oriented to person, place, time.

## Impression/Plan:

1. **Hypertrophy of nasal turbinates**
   Hypertrophy of nasal turbinates (J34.3)

   Plan: Counseling - Hypertrophy of nasal turbinates.
   Please refer to the education handout for detailed counseling.

   Plan: Saline irrigation.
   I recommended saline irrigations of the nose.

   Plan: Nasal endoscopy.
   Right Procedure: Nasal endoscopy, diagnostic
   Left Procedure: Nasal endoscopy, diagnostic
   Right Indication: Hypertrophy of nasal turbinates , Moderate to severe signs/symptoms of upper airway abnormalities in which a nasal speculum exam failed to determine etiology: anosmia, hyposmia, hoarseness, epistaxis, facial pain, odynophagia, dysphagia, serosanguinous nasal discharge, tightness in the throat, change in vocal quality, halitosis, apnea, or others, etc.
   Left Indication: Hypertrophy of nasal turbinates , Moderate to severe signs/symptoms of upper airway abnormalities in which a nasal speculum exam failed to determine etiology: anosmia, hyposmia, hoarseness, epistaxis, facial pain, odynophagia, dysphagia, serosanguinous nasal discharge, tightness in the throat, change in vocal quality, halitosis, apnea, or others, etc.
   Right Anesthesia: 4% topical lidocaine and topical oxymetazoline
   Left Anesthesia: 4% topical lidocaine and topical oxymetazoline

   Informed Consent: The benefits and risks of nasal endoscopy were discussed, including but not limited to: temporary pain or discomfort of the nose or throat, temporary sensation of inability to swallow, temporary bad taste, remote possibility of fainting episode.

   The flexible fiberoptic telescope was passed into the right naris and then passed atraumatically through the naris and through the posterior nasal cavity, and used to examine the nasopharynx. Exam findings are detailed in the exam section.

   The flexible fiberoptic telescope was passed into the left naris and then passed atraumatically through the naris and through the posterior nasal cavity, and used to examine the nasopharynx. Exam findings are detailed in the exam section.

   The patient tolerated the procedure well without complications.

2. **Neoplasm uncertain behavior, neck**
   Neoplasm of uncertain behavior, unspecified (D48.9)

   Plan: Counseling - Malignant neoplasm head/face/neck.
   Please refer to the education handout for detailed counseling.

   Plan: Additional Notes.
   FNA (01/27/2020)- Keratinous debris and squamous cell with focal mild atypia and scattered calcifications.
   Note differential includes epidermal inclusion, branchial cleft cysts & well differentiated Squamous cell Carcinoma (scanned)

Gregory Smith, MD (Primary Provider) (Bill Under)
(609) 403-8840 Work
(609) 403-8852 Home Fax

Princeton Eye and Ear - Lawrenceville
2999 Princeton Pike, 2nd Floor
Suite 5
Lawrenceville, NJ 08648

Page 2



# CHESSER, ROBERT

Visit Note: March 6, 2020    MS #:    Sex:    DOB:    ID #:
   04309..    Male    09/09/1999    EMA12843341

- Discussed with patient FNA came back inconclusive possibe branchial cleft cyst VS SCCA.
At this time we will need to do as followed (Plan of care)
- PET SCAN (Skull to thigh)
- Possible Surgical Intervention: Direct Laryngoscopy with excision and biopsy left tonsil mass possible left neck dissection (tonsillectomy)
NEED PATIENT TO BRING IN CT NECK DISC AND PET CT DISC MUST REVIEW FILMS BEFORE SCHEDULING PROCEDURE.

PET scan will determine if patient needs Surgery or just Chemotherapy/Radiation.

3.   Neoplasm uncertain behavior oropharynx
   Neoplasm of uncertain behavior of pharynx (D37.05)

   Plan: Counseling - Neoplasm uncertain behavior of the pharynx.
   Please refer to the education handout for detailed counseling.

4.   Squamous Cell Carcinoma
   Squamous cell carcinoma of skin, unspecified (C44.92)

   Plan: Counseling - SCC.
   Please refer to the education handout for detailed counseling.

   Plan: Order PET.
   Diagnosis: Squamous Cell Carcinoma - C44.92
   Protocol: PET - skull to thigh
   Medical Necessity / Indication: Highly suspicious solid (malignant) tumor - Initial evaluation / treatment strategy

   Provider: Gregory Smith, MD
   Priority: normal

**Staff:**

Gregory Smith, MD (Primary Provider)  (Bill Under)

Kasandra Santiago

Electronically Signed By: Gregory Smith, MD, 03/10/2020 11:19 AM EDT

RWJ Hamilton
**Patient Results**

FD #62149-031

| All results performed dates from 12-12-2019 | | | | |
|---|---|---|---|---|
| **CHESSER, ROBERT** | HMOP Hospital Same Day Medical | 50y | M | Referring, Community Physician |
| DSC | | Sep-09-1969 | | 62-62-58 / 073225183 |

Criteria for selection:

| 01-27-2020 16:50 | US Guided Biopsy / Aspiration | | | Su | 1 or more Final Results Received |
|---|---|---|---|---|---|

US Guided Biopsy /
Aspiration
   DIAGNOSTIC IMAGING

     Final     Updated

One Hamilton Health Place
Hamilton, NJ 08691-3599
609-584-6611
Radiology and Diagnostic Imaging

------- FINAL REPORT -------

DR CARL SCEUSA
5756 HARTFORD RD.
FORT DIX, NJ 08640 Name:      CHESSER, ROBERT
MRN:          626258
SEX:          M
DOB:          09/09/1969
Visit#        073225183
Patient Type: SAME DAY MEDICAL          Req. Dept.:    RWJMI
DATE OF EXAM: 01/27/2020 16:50
EXAM NAME: U/S GUIDED BIOPSY/ASPIRATION
Reason for Exam: LEFT NECK MASS BIOPSY
EXAM CODE: 46600389

ACCESSION : 3690069

ULTRASOUND GUIDED FNA OF A LEFT NECK MASS

INDICATION: Left neck mass

PROCEDURE:
Informed, signed, consent was obtained after risks and benefits the procedure and its alternatives were explained in great detail.

Skin overlying the palpable left neck mass was prepped and draped in sterile fashion. Buffered LIDOCAINE was administered as local anesthetic. Ultrasound probe was placed in a sterile sleeve.

Using ultrasound guidance with image documentation, an 18-gauge needle was advanced into the complex left neck mass, and approximately 10 mL of purulent appearing fluid was evacuated and handed directly to the on-site cytotechnologist. 2nd sample was advanced into the more complex component of the collection, and handed

---

### RWJ Hamilton
### Patient Results

| All results performed dates from 12-12-2019 | | | | |
|---|---|---|---|---|
| **CHESSER, ROBERT** | HMOP Hospital Same Day Medical | 50y | M | Referring, Community Physician |
| **DSC** | | Sep-09-1969 | | 62-62-58 / 073225183 |

| 01-01-2020 16:50 | US Guided Biopsy / Aspiration | | | 1 or more Final Results Received |
|---|---|---|---|---|

directly to the on-site cytotechnologist. Following, a Yueh centesis needle was advanced an additional aspirate was obtained and handed directly to the on-site cytotechnologist. Samples were deemed adequate both qualitatively and quantitatively for diagnostic purposes. Hemostasis was ensured. Sterile dressings were applied. Patient tolerated the procedure well without immediate complication.

IMPRESSION:
Successful ultrasound-guided aspiration of a left neck mass
Workstation ID:RWJ-RAIREAD02
Electronically Signed by: GURVAN BLACKMAN at 01/27/2020 06:47:28 PM

Signed by GURVAN BLACKMAN at 01/27/2020 06:47:28 PM
<Ramsoft Platform>

| 01-27-2020 17:01 | Med Cytology | | 1 or more Final Results Received |
|---|---|---|---|

Med Cytology                                                          Final
Case Number: 20-C-64

Procedure Date: 1/27/2020

Copies to: GURVAN BLACKMAN,
MD
CLINICAL INFORMATION: History of sickle cell and
hypercholesterolemia, FNA of a palpable left neck mass
SPECIMEN: FNA , Left neck mass
ThinPrep: 0 Cell Block: 1 Cytospin: 0 Smears: 2
GROSS EXAMINATION:
Specimen is labeled "FNA of Left neck mass". One pass were performed.
Two smears were made; of which one was stained for Diff-Quik and one
for PAP. One Cell Block was also obtained from approximately 10 cc. of
purulent fluid in a syringe.
On site specimen evaluation: Adequate (OO)
DIAGNOSTIC CATEGORY: ATYPIA OF UNDETERMINED SIGNIFICANCE.
DIAGNOSIS: FNA of Left Neck Mass, Smears and Cell Block.
- KERATINOUS DEBRIS AND SQUAMOUS CELLS WITH FOCAL MILD ATYPIA AND
SCATTERED CALCIFICATIONS.
NOTE: DIFFERENTIAL INCLUDES EPIDERMAL INCLUSION, BRANCHIAL CLEFT CYSTS
AND WELL DIFFERENTIATED SQUAMOUS CELL CARCINOMA.
REVIEWED BY: OO
88173, 88305
ELECTRONICALLY SIGNED BY:
ASIMA ARSLAN, MD 01/28/2020 14:10

| Requested By: Kuklish, Lindsey (Remote Chart Reviewer) | | Printed from: HMDpt HIM - Smartlink_SDS2 |
|---|---|---|
| 01-30-2020 09:56 | End of Report | Page: 2 of 2 |

# Bureau of Prisons
# Health Services
# Consultation Request

| Inmate Name: CHESSER, ROBERT | Reg #: 62149-037 | Complex: FTD |
|---|---|---|
| Date of Birth:   09/09/1969 | Sex:   M | |

**Report of Consultation:** Otolaryngology             **Subtype:** ENT Follow up

Inmate Name: CHESSER, ROBERT                         Reg #:   62149-037
Date of Birth: 09/09/1969                            Sex:     M
Institution:    FORT DIX FCI
                5756 HARTFORD & POINTVILE RD
                FORT DIX,New Jersey 08640
                6097231100

**Assessment:**

Left tonsil mass

Left neck mass

c/f SCCa of L tonsil

– Biopsy not conclusive

& PET/CT ASAP

**Plan:**

Need to review CD-Film of neck prior scheduling surgery.

& possible OR for

Direct laryngoscopy

(possible Left Neck dissection)

(possible radical tonsillectomy)

**Signature**
**Date** 3.10.2020

**Completed By:**

Report may be hand-written or (preferably) typed on this form.  If dictated on office or hospital letterhead to
follow, please indicate essential findings or recommendations to be acted upon pending final report.

Follow-up services and primary responsibility for inmate health care remains with Bureau of Prisons staff.
While discussion of diagnostic/treatment options with the inmate may be appropriate, they are subject to review
by the inmate's primary care provider, the institution utilitzation review committee and/or the BOP National
Formulary.

Please notify institution prior to scheduling surgery dates or follow-up appointments.

Inmate not to be informed of appointment dates.

Exhibit "D"

CHESSER, Robert
Register No. 62149-037
Remedy No. 1007291-F1

---

### Part B - Response

This is in response to your Request for Administrative Remedy, in which you allege you are concerned about your continued weight loss and wish to have a supplement such as Ensure.

A review of your medical records reveals your weight upon intake screening on January 22, 2019 was 165 lbs.  On December 10, 2019 you were evaluated by a Nurse for follow-up for a left neck mass. You reported a weight loss of over 40 lbs. in the last year. Your Body mass Index (BMI) at that time was 21. You requested Ensure at that time, and the medical provider submitted a consultation request for the Dietician.  On January 17, 2020, you were seen in Health Services and the decision was made to deny Ensure until the results of the pending pathology test were received.  On January 27, 2020, you underwent a biopsy of the left neck mass.  The biopsy results received on March 3, revealed a diagnosis of unspecified malignant neoplasm of skin, scalp, and neck.

On March 5, 2020, you were seen by the physician and an order was placed for Ensure.  A consultation was written for oncology and a follow-up CT scan.  This response is for informational purposes.

If you are dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons, Northeast Regional Office, United States Customs House-Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

_____        _____
David E. Ortiz                                      Date  3/16/20
Warden

Exhibit "E"



**Maryland**

DEPARTMENT OF HEALTH

## Coronavirus Disease 2019 (COVID-19)
## Frequently Asked Questions

Updated April 9, 2020

Under Governor Larry Hogan's direction, state agencies continue to develop comprehensive and coordinated prevention and response plans for coronavirus disease 2019 (COVID-19).

The Maryland Department of Health (MDH) will communicate directly with the public, providing updates as this situation develops and accurate information about how to protect yourself and your family.

If you have questions about COVID-19 that are not answered here, call your local health department or dial 2-1-1.

### What is COVID-19?
COVID-19 is a disease caused by a respiratory virus first identified in Wuhan, Hubei Province, China in December 2019. COVID-19 a new virus that hasn't caused illness in humans before. Worldwide, COVID-19 has resulted in thousands of human infections, causing illness and in some cases death. Cases have spread throughout the world, with more cases reported daily.

### What is the current COVID-19 situation in Maryland?
Up-to-date information about testing and case counts in Maryland are available at coronavirus.maryland.gov. The page is updated daily.

On March 30, Gov. Hogan issued a Stay at Home order. Maryland residents should not leave their home unless it is for an essential job or for an essential reason, such as obtaining food or medicine, seeking urgent medical attention, or for other necessary purposes. More information about the stay at home order is available at https://governor.maryland.gov/wp-content/uploads/2020/03/Gatherings-FOURTH-AMENDED-3.3 0.20.pdf

On March 5, Gov. Hogan declared a state of emergency to further mobilize all available state resources. The declaration officially authorized and directed the MDH and the Maryland

### If someone has COVID-19, what will happen to them?

2

Case 1:19-cr-00227-JKB   Document 88   Filed 09/01/21   Page 27 of 30

# Certificate of Achievement

Presented to
**Robert Chesser**
**(62149-037)**

For successfully completing
the Drug Education Program

**Drug Education Program**

_M. R. Betts_                          09/19/2019
M. R. Betts., Drug Treatment Specialist   Date
FCI FORT DIX

# Certificate of Achievement

## This certifies that

ROBERT CHESSER

### has satisfactorily completed

BASIC BUSINESS CONCEPTS

## Consisting of ___8___ Hours of Training

This certificate is hereby issued this ___27th___ day of ___FEBRUARY___, 20 _20_

_____
Counselor

2-27-2020

```
FTDTT               *       INMATE EDUCATION DATA        *      03-11-2020
PAGE 001 OF 001 *                TRANSCRIPT              *      11:53:05

REGISTER NO: 62149-037      NAME..: CHESSER                 FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: FTD-FORT DIX FCI

------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
FTD  ESL HAS    ENGLISH PROFICIENT       01-13-2019 1405 CURRENT
FTD  GED HAS    COMPLETED GED OR HS DIPLOMA  04-11-2019 0001 CURRENT

------------------------- EDUCATION COURSES -------------------------
SUB-FACL   DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
FTD GP     MONEY SMART - EAST       10-21-2019 02-11-2020  P  C  P    24
FTD GP     JOB READINESS - EAST     10-21-2019 02-11-2020  P  C  P    24
FTD GP     GED E PRE RM217 M-F 0730-0900 03-07-2019 04-11-2019 P W I  30

------------------------- HIGH TEST SCORES -------------------------
TEST       SUBTEST      SCORE    TEST DATE    TEST FACL   FORM    STATE
TABE D     BATTERY       2.9     02-22-2019     FTD        9
           LANG MECH     0.0     02-22-2019     FTD        9
           LANGUAGE      1.8     02-22-2019     FTD        9
           MATH APPL     6.0     02-22-2019     FTD        9
           MATH COMP     1.9     02-22-2019     FTD        9
           READING       3.6     02-22-2019     FTD        9
           SPELLING      0.0     02-22-2019     FTD        9
           TOTAL MATH    3.0     02-22-2019     FTD        9
           VOCABULARY    0.0     02-22-2019     FTD        9


G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

ROBERT CHESSER, # 62149-037
FCI FORT DIX
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 2222
JOINT BASE MDL, NJ 08640

THE HONORABLE JAMES K. BREDAR
UNITED STATES DISTRICT COURT
101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201-2691

FILED _____ ENTERED
LOGGED _____ RECEIVED

MAY 26 2020

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

COURT SECURITY OFFICER

MARYLAND 2020